UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                          CASE NO.  10-44166-RAM
                                                CHAPTER 11
ELITE GROUP OF MIAMI, INC.

       Debtor.
_____/

## **DEBTOR'S PLAN OF REORGANIZATION**

COMES NOW DEBTOR, ELITE GROUP OF MIAMI, INC., and files its Chapter 11

Plan of Reorganization as fully set forth below.

Submitted by:

**SCAGLIONE QUESADA & BON, LLP**
Michael J. Scaglione, Esq.
FBN. 0174970
Attorneys for the Debtor
2600 Douglas Road, PH 10
Coral Gables, Florida 33134
Telephone:    (305) 447-0392
Facsimile:    (305) 447-0389

## ARTICLE I
## SUMMARY

This Plan of Reorganization ("the Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of ELITE GROUP OF MIAMI, INC. (the "Debtor) from cash flow from post-confirmation operations.

This Plan provides for two classes of secured claims; one class of unsecured claims; and one class of security holders. This Plan also provides for the payment of administrative claims.

All creditors and security holders should refer to the Articles III though VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding the Plan and the rights of creditors and equity security holders will be circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one (If you do not have an attorney, you should consult one.)**

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1A:  The claim  of **Wachovia Bank, N.A.,** to the extent allowed as a secured claim under Section 506 of Code.

Class 1B: The claim of **Miami-Dade County Tax Collector** to the extent allowed as a priority claim or a secured claim under Section 506 of the Code.

2.02    Class 2A:  All unsecured, non-priority claims of creditors allowed under Section 502 of the Code.

2.03    Class 3: The equity interests in the Debtor.

- 2 -

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## AND U.S. TRUSTEE'S FEES

3.01    Unclassified Claims. Under Section 1123 (a) (1) administrative expense claims are not in classes.

3.02    Administrative Claims.  All allowed administrative claims, other than allowed administrative claims incurred in the ordinary course of business, shall be paid:

(a) in full on the Effective Date or, if such claim is objected to, on the date of a final order allowing any such administrative claim; or

(b) upon such other terms as may be agreed to between the Debtor and each such administrative claimant.

Allowed administrative claims incurred in the ordinary course of business shall be paid in the ordinary course of business from the Debtor's on-going business operations.

3.03    United States Trustee Fees. All fees required to be paid by 28 U.S.C. Section 1930 (a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under the Plan:

Class 1A- Secured Claim Wachovia Bank, N.A.[1] - This claim is impaired. The Debtor proposes to pay present value of the secured claim, $808,000.00, based upon bonafide property appraisals, over 15 years, interest only for the first 2 years at the Prime rate of interest set forth in the Wall Street Journal; thereafter, the Debtor shall pay principal and interest for the following 13 years at a fixed rate of 5% based upon a 30-year amortization rate. The balance owed would be paid in a balloon payment due at the end of 15 years, or when the

---

[1]It should be noted that as of the date of filing of Debtor's Plan, no Proof of Claim has been filed by this Creditor.

property is sold, refinanced or transferred, whichever comes first. Monthly Payments will begin on the first day of the first full calendar month following confirmation of the Plan. The creditor will retain its lien on the Property.

Class 1B- Priority/Secured Claim of Miami-Dade County Tax Collector- This claim is not impaired. The Debtor proposes to pay present value of the claim, $120,937.03, over twenty four (24) months. Debtor shall pay the sum of $500 per month for the first twenty three (23) months. The remaining balance owed would be paid in a balloon payment due in the twenty fourth (24th) month, or when the property is sold, refinanced or transferred, whichever comes first. Monthly Payments will begin on the first day of the first full calendar month following confirmation of the Plan. The creditor will retain any lien(s) it may have on the Property.

Class 2A- General Unsecured Claims - No Proofs of Claim have been filed by any party in this Class. However, should claims be timely filed and allowed, holders of Class 2A Claims shall receive their allowed claimed amounts over a 3 year period of time on a monthly basis commencing on the 1st day of the calendar month following the Effective Date and thereafter on the 1st day of each month.

Class 3 - Equity Interests in Debtor - All Class 4 equity interests shall revest in the Equity Owner and Reorganized Debtor on the Effective Date.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. Upon information and belief, Wachovia Bank, N.A. may make a claim in the sum of approximately $750,000.00. This claim is disputed. Debtor contends that another corporate entity, not a party to this Bankruptcy, is responsible for this claim. Debtor

- 4 -

shall seek to strip off or otherwise void any security interest claimed by Wachovia Bank, N.A., related to this disputed debt.

     5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by final non-appealable order.

     5.03    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and comprise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rule of Bankruptcy Procedure.

## ARTICLE VI

## PROVISION FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

     6.01    Assumed Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01 upon the date of the entry of the order confirming this Plan. **Any proof for damages arising from the rejection of an executory contract or unexpired lease under this section must be filed no later that thirty(30) days after the date of the order confirming the Plan.**

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THE PLAN

     7.01    Funding of the Plan. Payments and distribution under the Plan will be funded by the revenue generated from operating the Property as well as capital infusion from Carlos Martinez.

     7.02    Vesting & Prevention of Assets. On the Effective Date, and pursuant to the Order confirming the Plan, the Debtor will retain ownership of the Confirmation Date Assets for the benefit of the Debtor's estate and its creditors, all Recovery Rights, including, but not limited to, any causes of action and claims for relief under state or federal law, and any causes of action or claims for relief existing under state or federal law.

     The Debtor shall have the full power, authority and standing to prosecute, compromise or otherwise resolve such recovery rights ("Recovery Rights"), with all proceeds derived

therefrom to become Property of the Estate and distributed in accordance with the Plan. The Debtor shall not be subject to any counterclaims in respect of these Recovery Rights, provided, however, that the Recovery Rights will be subject to any setoff rights to the same extent as if the Debtor had pursued the Recovery Rights.

Notwithstanding any provision or interpretation to the contrary, nothing in the Plan or the Confirmation Order, including the entry thereof, shall constitute or be deemed to constitute a release, waiver, impediment, relinquishment or bar, in whole or in part, of or to any Recovery Rights or any other claim, right or cause of action possessed by the Debtors prior to the Effective Date.

Notwithstanding anything to the contrary in the Plan or in the Disclosure Statement, the provisions of the Disclosure Statement, and the Plan that permit the Debtor to enter into settlements and compromises of any potential litigation shall not have and are not intended to have any *res judicata* effect with respect to any pre-petition claims and causes of action that are not otherwise treated under the Plan and shall not be deemed a bar to asserting such claims and causes of action. The Plan Administrator shall have the authority to settle claims and litigation as provided in the Plan, following a hearing on notice, provided that all such settlements shall nevertheless be subject to the settlement standards imposed by Bankruptcy Rule 9019 and the standards set forth in *In re Justice Oaks II, Ltd.*, 898 F. 2d 1544, 1549 (11th Cir. 1990).

7.03    Management and Compensation of Officers and Directors. After confirmation of the Plan, the identity and compensation of officers and directors of the Debtor will be as follows:

Carlos Martinez - President, Vice President, Secretary, Treasurer, Director. He is an insider and he will not be receiving compensation.

7.04    Corporate Action. Upon entry of the Confirmation Order, the transactions contemplated by this Plan shall be deemed authorized and approved in all respects. On the Effective Date, the matters provided under the Plan involving the corporate structure of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable state laws without any requirement of further action by any director or equity shareholder of the Debtor. On the Effective Date, the Reorganized Debtor shall be authorized and directed to take all necessary and appropriate actions to effectuate the transactions contemplated by the Plan.

7.05    <u>Continued Corporate Existence</u>.  Except as otherwise provided in the Plan, the Debtor will continue to exist after the Effective Date, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtor is organized pursuant to its articles of organization and bylaws or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan or pursuant to any amended articles or organization, or amended bylaws.  Notwithstanding the foregoing, the Debtor may change its status of incorporation or formation or alter its corporate structure (either through mergers, consolidations, restructurings, conversions, dispositions, liquidations, dissolutions, or otherwise) after the Effective Date as may be determined by the Debtor to be appropriate.  In each case in which the surviving, resulting, or acquiring company in any such transaction is a successor to a Debtor, such successor company shall perform the obligations of the applicable Debtor under the Plan to pay or otherwise satisfy the allowed Claims against the Debtor.

7.06    <u>Corporate Governance</u>. Upon the occurrence of the Effective Date, the reorganized Debtor's Board of Directors will continue to consist of one member as indicated in Section 7.03 above.  On the Effective Date, the reorganized Debtor's articles of organization will be amended to the extent necessary to implement the Plan.  The reorganized Debtor shall have full control and authority over Property of the Estate (as that term is defined in Section 541 of the Bankruptcy Code), without the need for Bankruptcy Court approval pursuant to Section 363 or 330 of the Bankruptcy Code, or any other provision of court or United States Trustee control or oversight during a chapter 11 case, including but not limited to policy making, day-to-day operations, financing, transactional, corporate governance, and any and all other corporate activity.

**ARTICLE VIII**
**<u>PROVISIONS GOVERNING DISTRIBUTION</u>**

8.01    <u>Distributions</u>.  Any payment or distribution pursuant to this Plan, to the extent posted in the United States Mail, shall be deemed made when deposited by the Debtor or an agent authorized by the Debtor, into the United States Mail.  Payments of cash shall be made by check drawn on a domestic bank or by wire transfer from a domestic

- 7 -

bank.

      8.02 <u>Delivery of Distributions</u>. Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim or proofs filed by such holders (or at the last known addresses of such holders if no proof of claim is filed; or if the Debtor has been notified of a change of address, at the address set forth in such notice).

      8.03 <u>Unclaimed Property</u>. If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title, and interest in and to the unclaimed property shall be held in reserve by the Debtor to be distributed to other Creditors in accordance with this Plan. The Debtor shall not be required to attempt to make further distribution to the holders of such unclaimed property. Distributions unclaimed for a period of 90 days after they have been delivered (or attempted to be delivered) in accordance with the Plan to the holders entitled thereto that: (i) are intended to be final distributions ; and (ii) do not exceed $1,000 in the aggregate, shall, as soon thereafter as practicable, be donated to an organization selected by the Debtor and officially recognized by the Internal Revenue Service as a charitable organization, a contribution to which would be deductible for federal income tax purposes.

      8.04 <u>Manner of Payment</u>. At the option of the Debtor, any cash payment to be made to any Person pursuant to the Plan may be made by a check, bank check or wire transfer or as otherwise required or provided in applicable agreements.

      8.05 <u>Timing of Distributions to Creditors Holding Allowed Claims</u>. Distributions to Creditors holding Allowed Claims shall be made on the later of the Effective Date or the date the Claim becomes Allowed in accordance with the provisions of Article V of the Plan.

      8.06 <u>Fractional Cents</u>. When any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of $.050 or less and rounding up in the case of more than $.050).

**ARTICLE IX**

**<u>GENERAL PROVISIONS</u>**

9.01  Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

"Chapter 11 Case" means the bankruptcy case of the Debtor, Case Number 10-44166-RAM pending in the United States Bankruptcy Court for the Southern District of Florida.

"Code" means title 11 of the United States Code.

"Confirmation Order" means an order entered by the Court confirming the Plan.

"Court" means the United States Bankruptcy Court for the Southern District of Florida.

"Debtor" means Elite Group of Miami, Inc.

"Disclosure Statement" is the Disclosure Statement in Connection with Debtor's Plan of Reorganization as may be amended from time to time.

"Equity Owner" means the principal of the Debtor, Carlos Martinez.

"Effective Date" is the date referred to in Section 9.02 of the Plan.

"Petition Date" means November 4, 2010.

"Plan" means this Debtor's Plan of Reorganization, as may be amended from time to time.

"Plan Proponent" means Elite Group of Miami, Inc.

"Reorganized Debtor" means Elite Group of Miami, Inc.

9.02  Effective Date of Plan.  The effective date of this Plan is the eleventh (11th) business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective day will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

9.03  Severability.  If any provisions in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04  <u>Binding Effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors and assigns of such entity.

9.05  <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not effect the meaning or interpretation of this Plan.

9.06  <u>Controlling Effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.07  <u>Revocation or Withdrawal of Plan</u>.

(a)    The Plan Proponent reserves the right, to revoke or withdraw the Plan prior to the Effective Date.  If the Plan is revoked or withdrawn, then the result shall be the same as if the Confirmation Order was not entered and the Effective Date did not occur.  The Confirmation Order shall be null and void and of no effect if the Plan is terminated after the Confirmation Order but before the Effective Date.

(b)    If the Plan is revoked or withdrawn prior to the Confirmation Date, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of such entity or any Person in any further proceedings involving such entity or Person.

9.08  <u>Nonmaterial Modifications</u>.    The Debtor may, with the approval of the Bankruptcy Court and without notice to holders of Claims and equity interests, correct any nonmaterial defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.

9.09  <u>Material Modifications</u>.  Modifications of this Plan may be proposed in writing by the Debtor, at any time before Confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, an the Debtors have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after Confirmation and before any distributions are made pursuant to the Plan, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such modification.

9.10  <u>Notices</u>.  Any notice required or permitted to be provided under the Plan shall be in writing and served by either: (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) prepaid overnight delivery service and addressed as follows:

>       If to Debtor:
>       Scaglione Quesada & Bon, LLP
>       2600 Douglas Road, PH 10
>       Coral Gables, Florida 33134
>       Attn: Michael J. Scaglione, Esq.

9.11  <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

## ARTICLE X
### DISCHARGE

<u>Discharge</u>.  On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(I)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B).  After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

- 11 -

## ARTICLE XI

## LIMITATIONS OF LIABILITY, RELEASES AND INJUNCTION

11.01     <u>Exculpation and Limitation of Liability</u>.  Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date, the Debtor and its respective officers, directors, members, employees, representatives, counsel, financial advisors or other agents, and their respective successors and assigns (the "Released Parties"), shall be deemed released by each of them against the other , and by all Holders of Claims or Equity Interests, of and from any Claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, in preparation for, or arising out of, this Chapter 11 Case, including, without limiting the generality of the foregoing, all sales of assets of the Debtor's Estate, the negotiation of the terms of the Plan, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the Property to be distributed under the Plan, except for acts or omissions which constitute bad faith, willful misconduct or gross negligence, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

11.02     <u>Injunction</u>.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold or may hold a Claim, Equity Interest or other debt or liability that is treated pursuant to the terms of the Plan are enjoined from taking any of the following actions on account of any such Claims, Equity Interests, debts or liabilities, other than actions brought to enforce any rights or obligations under the Plan, against the Debtor, its Estate, and Carlos Martinez: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability or obligation; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  This injunction shall remain in full force and effect until final distributions to Creditors are made under this Plan.

11.03    <u>Release of Third Parties</u>.  Except as otherwise provided in this Plan or the Conformation Order, on the Effective Date, Carlos Martinez (the "Third Party"), shall be deemed released by all Holders of Claims from any Claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, in preparation for, or arising out of, this Chapter 11 case.

Respectfully submitted,

ELITE GROUP OF MIAMI, INC.

By: _____

Carlos Martinez, President

- 13 -